## MELLEN v. THE HAMILTON FIRE INSURANCE COMPANY.

The assignment of a policy of insurance after a loss is not within the clause prohibiting a transfer without the consent of the insurers. The restriction is upon assignment during the pendency of the risk, and not of a transfer, of the debt arising from a loss.

As a matter of law, an unexplained delay for twenty days to notify insurers, residing in the same city with the insured, of a subsequent insurance, is unreasonable, and avoids a policy which required such notice to be given with reasonable diligence.

The knowledge of a broker who effected both insurances under no employment by the insurers, but for a commission paid by them upon the premiums received for such risks as he procured to be offered and they chose to accept, *Held* not to charge the prior insurers with notice of a subsequent insurance.

APPEAL from the Superior Court of New-York city. Action upon a policy of insurance against fire for $2,000,

issued by the defendant to one Mark O'Brien. The answer set up that O'Brien, without the knowledge or assent of the defendant, had procured further insurance upon the same property covered by this policy, and that the insurance upon said property thereby became in excess of the real value thereof. Upon the trial before Mr. Justice SLOSSON and a jury, it was proved that O'Brien was a retail dealer in dry goods in New-York city, where the defendant has its location and office. He obtained the insurance through one Kane, an insurance broker, who obtained insurances for about twenty different companies. His course of business was as follows: he canvassed the city and solicited insurances; brought proposals to the company; if accepted, he got the policy and delivered it to the parties insured; the parties paid him the premium, which he paid over to the company, the latter allowing him a commission of ten per cent. He was not the agent of any particular company, but went to any company that would pay him a commission and offered risks; the companies did not insure upon his representations, but sent their own surveyors to examine the property offered for insurance. Kane procured the policy in suit upon the goods of O'Brien on the 12th April, 1854, the day of its date. The goods were at that time insured to the amount of $2,000 by other companies, and this fact was noted in the policy, which contained a provision that "if the insured or his assigns shall hereafter make any other insurance on the same property, and shall not, with all reasonable diligence, give notice thereof to this corporation and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect, and in case of any other insurance upon the property thereby insured, whether prior or subsequent to the date of this policy, the insured shall not, in case of loss or damage, be entitled to demand or recover on this policy any greater proportion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on

said property." It also contained the usual provision that the interest of the insured in the policy is not assignable without the written consent of the insurer, and that the policy should become void in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent.

Between the 12th of April, 1854, and 23d of June, 1854, O'Brien increased his stock of goods, and on the latter day, he obtained, through the broker, Kane, a further insurance of $1,000 from the St. Nicholas Company, no notice of which was given to the defendant in this action until after the destruction of the property by fire, which occurred on the night of the 13th July, 1854; the notice being contained in the affidavit verifying the preliminary proofs of loss, which were served on the 26th of July. After the fire, O'Brien assigned this and other policies of insurance, and all his claim and demand against the defendant under or by reason of the policy, to the plaintiff, in trust to pay certain debts of O'Brien, specified in the assignment, in full or *pro rata*, as the avails of the assigned demands might enable him to do. Upon the closing of the evidence, the counsel for the defendant moved for a dismissal of the complaint on the ground that the policy had become void at the time of the loss by reason of the failure to give notice of the subsequent insurance, and also that it was avoided by the assignment of the policy after the loss, without the consent of the insurers. The judge reserved the question of law, raised by the motion, for the opinion of the court at general term, and submitted to the jury, as questions of fact, the value of the goods destroyed by the fire, and the amount of the damages sustained by reason of the fire. The jury found a verdict for the plaintiff, and assessed the value of the goods at over $5,001, and the plaintiff's damages at $2,105. The verdict was entered, subject to the opinion of the court upon the whole case, to be heard in the first instance at general term, and the case being thus.

heard, the court dismissed the complaint and ordered judgment for the defendant. The plaintiff appealed to this court.

*Nicholas Hill*, for the appellant.

I. The mere fact of the subsequent insurance, in the absence of fraud or unfair dealing on the part of the insured, did not render the policy issued by the defendants' void, though no notice of it had been given up to the time of the fire. 1. The provisions of the policy, and conditions of insurance annexed thereto, should be liberally construed, so as to carry into effect their intent. Taken together, their obvious intent is to prevent insurance beyond the value of the property, and to secure to the company the benefit of the joint liability of the other companies. So long as the subsequent insurance is not excessive, it enures to the benefit of the prior insurers, by diminishing their liability in case of partial loss. Notice is to be given with reasonable diligence, "to the end" that the subsequent insurance may be indorsed on the policy; but the notice is not required to be in writing, or within any particular time, nor to be brought to the knowledge of any particular officer, the controlling inquiry being always whether any damage has been sustained by the company. Thus it has been decided that, where an agent had been notified, it was of no consequence that he neglected to notify the company, they having sustained no damage from the subsequent insurance. (*Ewen* v. *Montgomery Ins. Co.*, 5 *Hill*, 101 ; *Lucas* v. *Jefferson Ins. Co.*, 6 *Cow.*, 637, 8.) 2. There had been no want of reasonable diligence in giving notice of the subsequent insurance up to the time of the fire in question. It was effected June 23, 1854. The fire happened July 13, 1854. The interval of nineteen days would not have justified the company in refusing to acknowledge the subsequent insurance on the ground of unreasonable delay in giving the notice, if the fire had not happened. In

Mellen *v.* The Hamilton Fire Insurance Company.

the absence of fraud and of any change in the rights of the parties and of any express provisions as to time, the delay was not unreasonable. The defendants had notice by the preliminary proofs. 3. If the question as to "reasonable diligence" was a question of fact, it should have been submitted to the jury. If it was a question of law, there is nothing in the case to justify its being decided against the plaintiff. The happening of the fire did not change the rights of the parties. The company not having been damaged by the increased insurance, it would be most inequitable to give them the benefit of an objection which could not have been reasonably made had the fire not occurred. The defence is purely technical, and should not be favored by a strict construction against the plaintiff. ( *Wilson* v. *Genesee Ins. Co.*, 16 *Barb.*, 511.)

II. The defendants had sufficient notice of the subsequent insurance, through the broker Kane. (*Sexton* v. *Montgomery Ins. Co.*, 9 *Barb.*, 191; *Westlake* v. *St. Laurence Ins. Co.*, 14 *Barb.*, 206.) By the course of business adopted by this and other insurance companies in the city of New-York, and pursued by the defendants in regard to the insurance in question, the broker was so held out as the agent of the company as to justify O'Brien, the insured, in supposing that notice to him was sufficient. The question is not what was the actual authority possessed by the agent, but what had the insured a right, under all the circumstances, to infer in regard thereto from the acts and dealings of the company? ( *Perkins* v. *Washington Ins. Co.*, 4 *Cow.*, 645 ; *Lightbody* v. *N. A. Ins. Co.*, 23 *Wend.*, 18 ; *Johnson* v. *Jones*, 4 *Barb.*, 369.)

*E. J. Phelps*, for the respondent.

I. The condition that notice should be given with reasonable diligence of a subsequent insurance, constitutes a valid and binding element of the contract between the parties. (*Potter* v. *The Ontario and Livingston Ins. Co.*, 5 *Hill*, 47;

*Egan* v. *The West. Ins. Co. of Albany*, 5 *Denio*, 326; *Tillou* v. *The Clinton and Essex Ins. Co.*, 7 *Barb.*, 546.)

II. The knowledge of the broker was not notice to the defendants of the second insurance. He was in no sense their agent, but was the agent of the insured. That such is the relation of insurance brokers in the city of New-York, is well understood. He was not even the agent of the defendants, for the purpose of obtaining and paying over the premium. A payment by the insured to his broker, which never reached the company, would obviously be no payment, so far as they are concerned. But if it were possible to regard him as the agent of the company for this purpose, that agency terminated when the premium was paid. It is not claimed that he ever communicated his knowledge to the defendants, or that it was any part of his business or undertaking to do so. The decisions relied on by the plaintiff, on this point, relate to an agency of a totally different character.

III. The notice contained in the preliminary proofs was not a compliance with the condition. The object of the provision is to enable the company to withdraw from the contract, as they have a right to do by its terms, in case of an over insurance, which is uniformly regarded in law and in practice as increasing the risk. (*Potter* v. *Ontario and Livingston Ins. Co.*, *supra.*) Of course this object cannot be answered by a notice after the loss occurs. The notice must therefore be given before the loss, if there is reasonable time for that purpose. Twenty days elapsed in this instance, after the second insurance, before the fire, all the parties residing in the city of New-York. All benefit to be derived by the defendants from the notice was, in the meantime, lost. Surely it cannot be thought that this was "reasonable diligence," either in fact or within the rule adopted in analogous cases. (*Inman* v. *West. Fire Ins. Co.*, 12 *Wend.*, 452.)

The court, all the judges except ROOSEVELT, J., concurring, affirmed the judgment, for the reasons stated by the

Mellen *v.* The Hamilton Fire Insurance Company.

late Mr. Justice DUER, in the court below, which were as follows:

DUER, Justice. The objections taken on the trial to the sufficiency of the preliminary proofs, and to the right of the plaintiff to maintain the action in his own name, were very properly abandoned on the argument before us. Where an action is brought by a trustee, in whom the legal title is vested, it is certainly not necessary that the *cestuis que* trust should be made parties, either as plaintiffs or defendants, unless where the action is brought for the purpose of determining, or involves the determination of, their respective rights and interests under the instrument creating the trust.

The objection that the assignment to the plaintiff was made without that consent in writing of the defendants which the policy requires, although not abandoned upon the argument, is, in our opinion, quite as untenable as those that have been mentioned.

The restrictive clause in the policy, upon which the objection is founded, refers only to an assignment of the policy during the pendency of the risks and accompanying the transfer of an interest in the property insured, and, thus interpreted, there are evident reasons for its introduction; but where the assignment is made, as in the case before us, when the risks have ended, and for the sole purpose of enabling the assignee to recover a loss, it is in reality no more than an assignment of a debt, which, as the company has no motive of interest for preventing, it would be unreasonable to suppose was meant to be prohibited. This limited interpretation of the clause was adopted by this court many years since, in the case of *Brichta* v. *The Lafayette Insurance Company;* and as we see no reason to doubt the propriety of the decision, and are not aware that it has ever been departed from, we hold ourselves bound to follow it. (2 *Hall S. C.,* 372; *Lazarus* v. *Commonwealth Insurance Company,* 5 *Pick.,* 79 ; 2 *Duer on Ins.,* 64, 65, 66.)

The plaintiff would be entitled to judgment, were there no other objection to his recovery; but an objection remains to be stated, to which no answer, that we can deem satisfactory, has been given, and, unrefuted, it is fatal.

It is insisted that, before the happening of the loss, the insurance had been rendered void by the violation, on the part of the assured, of that provision in the policy which made it his duty to give notice to the company, with all reasonable diligence, of any further insurance that might be effected by him, and to have the same indorsed on the policy, or otherwise acknowledged by the company in writing. A further insurance was effected by him on the 23d of June, 1854, and no other notice of the fact was given to the company than that contained in the preliminary proofs upon which payment of the loss was demanded, and these, the case shows, were not made up and served until the 26th July following. The delay, it is contended, was unreasonable, and has not been justified or excused.

On the part of the plaintiff, two replies have been made to the objection: First. That the witness, Kane, was the general agent of the defendant, and that, as the subsequent insurance was procured by him, his knowledge of the fact was equivalent to notice to the company, and several adjudged cases were referred to as sustaining this position; Second. That there was no want of reasonable diligence, even on the supposition that no other notice was given to the company than by the service of the preliminary proofs. Neither reply can we hold to be sufficient. The allegation that Kane was the general agent of the defendants, to whom a notice, binding on the company, of a subsequent insurance, could properly be given, is not only not sustained, but in our opinion is plainly contradicted by the evidence. He was an insurance broker; and from the nature of his business, as such, was no more the general agent of the defendants than of any other company or individual to whom his professional services had been rendered. In procuring the

insurance, he was the agent of the assured, and if, before the transaction was complete, he became for any purpose the agent of the defendants, that agency wholly ceased when he had delivered the policy to the assured and had paid over to the company the premium which he had received. From this time, there was no such relation between him and the defendants as could make it his duty to communicate to the company his personal knowledge of a subsequent insurance, or could justify third persons in believing that this duty was imposed on and would be discharged by him. We think it would be extravagant to say that the knowledge which, in a separate transaction, he acquired of a further insurance, was alone sufficient to affect the company with notice of the fact. The cases, therefore, to which we were referred, bear no analogy to the present; and it is needless to consider whether we should have held them to have been applicable or controlling, had the general agency of Kane, or the fact that he was held forth to the public by the defendants as such agent, been established on the trial. The question whether, had such express and timely notice of the subsequent insurance been given to the defendants, they might not, by refusing to indorse it on the policy, or otherwise to acknowledge it in writing, have discharged themselves from all further liability, we shall also leave undecided.

The sole question that remains is, whether there was such a want of reasonable diligence on the part of the assured, in giving the notice which the policy requires, as rendered the insurance void at the time of the fire; for if it was then in force, the defendants are certainly liable, and the notice given by the preliminary proofs may well be deemed sufficient. As the facts are undisputed, this question was treated by the counsel, and is regarded by us, as purely a question of law, and its proper determination, as such, it seems to us, is not at all difficult or doubtful. If the only purpose for which notice of a subsequent insurance is required were that of enabling the prior insurers to ascertain for what

proportion of a loss they might eventually be liable, no such notice would seem to be necessary until the actual occurrence of a loss, since, if given then, it would fully answer the purpose for which alone it was intended, and a delay working no prejudice to the insurers could not justly be qualified as unreasonable. But this is not the only, nor, as we apprehend, the principal reason for requiring that express notice of every further insurance upon the same property shall be given. By one of the conditions annexed to the policy, the company may elect, at any time and for any cause, to terminate the insurance, by giving notice to the assured and returning a due proportion of the premium; and to enable an insurance company to exercise properly this discretionary power, it is important that it should have a timely knowledge of the facts, upon which its exercise will usually depend. Of these facts there is probably none more important to be known than that of the total amount of the sums insured upon the same property; since it is by a comparison of this amount with the value of the property that prudent insurers, in making the election which the policy gives to them, are certain to be governed. Hence it is that the fact of a further insurance is required to be made known to them with "all reasonable diligence," instead of deferring the communication until the happening of a loss. We think, therefore, that the words "reasonable diligence," looking to the purpose for which they are inserted, demand promptitude of action and exclude unnecessary delay, and consequently that an unexplained delay of nineteen days is conclusive proof of a want of that reasonable diligence which was necessary to be shown to continue the policy in force. We think that it was not in force when the fire happened, and that the loss claimed is therefore not recoverable.

ROOSEVELT, J. (Dissenting.) The company, in their answer, place their resistance to the plaintiff's claim on the following grounds: First. That his assignor was bound by

the terms of the policy to "give notice" of any further insurance "with all reasonable diligence;" Second. That he effected a further insurance for $1,000 twenty days before the fire without giving notice of it; Third. That "the insurance upon the property thereby became in excess of the real value." There is no allegation, it will be observed, that the plaintiff's assignor had suffered an unreasonable time to elapse. No issue is raised on that point; and at the trial the only ground, except one which I shall presently notice, on which the motion to dismiss the complaint was placed, was that no notice had been given of the second insurance.

This, as it appears to me, was of itself an immaterial issue. The real point was, or rather should have been, if the pleadings had been properly framed, whether the fire took place before the party had had a reasonable time to notify the underwriters of the second insurance. Twenty days might be reasonable, or it might be unreasonable, according to circumstances. As the case was one of a forfeiture of legal rights, it was incumbent on the party inisisting to aver it and to sustain his averment by proof. The company did neither. They did not even ask that the question should be submitted to the jury. They abandoned also the alleged excess of insurance, and allowed a verdict to be taken for the plaintiff, subject to the opinion of the court at general term "on the question of law raised on the motion for dismissal," and with liberty, if deemed proper, to direct a dismissal of the complaint. A dismissal accordingly having been directed, the plaintiff appeals to this court and presents his case in a so-called bill of exceptions, "settled by consent of parties." I find no exceptions in it. At the trial the plaintiff could have taken none, as the judge in effect ruled in his favor. But when that ruling was reversed by the general term, it having been given only conditionally, the proper course would have been to have stated it in the opposite form with an exception by the plaintiff and that exception overruled at general term. I have treated the

case, however, as if it had been regularly presented, and in that view the judgment should be reversed. The general term placed their decision on the ground of unreasonable delay. No such issue, we have seen, was made.

But waiving that difficulty, is twenty days, under all conceivable circumstances, and with every conceivable matter of excuse, necessarily, *per se,* unreasonable? The court below have so treated it; and accordingly have disposed of the point, not as a subject for the consideration of the jury, but as a dry question of law. In this I think they erred.

As to the clause in the policy prohibiting assignments without the company's consent, it has no reference to assignments made after the loss has occurred. The policy then becomes a fixed chose in action, transferable like any other similar property. It is of consequence to the underwriters, while the risk continues, to know whom they are insuring, but of no consequence to them, after a fire, whether they pay the damages to A or to B.

The jury having, in effect, found that there was no excess of insurance and of course no temptation to willful firing, and that having been in reality the only issue made, the dismissal of the complaint should be reversed and judgment entered for the plaintiff for the damages assessed, with costs.

Judgment affirmed.