## CROMWELL *vs.* THE BROOKLYN FIRE INSURANCE COMPANY. and FRANCIS EICHENLAUBE.

Where a purchaser agrees to insure for the benefit of his vendor and to assign the policy for his security, and he subsequently procures the building to be insured, but does not assign the policy to the vendor, the agreement operates as an equitable assignment of the *money* payable upon the policy, in case of loss, but not as an assignment of the *policy*. Hence the case does not come within the terms of a clause in the policy, declaring that the interest of the insured in the policy is not assignable, unless with the consent in writing of the insurers, and that the policy shall become void if such interest is transferred or terminated without such consent. LOTT, J. dissented.

APPEAL, by the plaintiff, from a judgment entered at a special term, dismissing the complaint. The action was brought by the plaintiff claiming to be the equitable assignee of a policy of insurance. The only defense which was pressed, on the trial at special term, was, that the policy contained the following clause: "The interest of the insured in this policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

And the defendants claimed that the assignment having been made without the consent of the insurers, avoided the policy. The court sustained the objection, and dismissed the complaint.

*J. W. Gilbert*, for the appellant. I. If the agreement of the insured be in legal effect, an assignment of the policy, or of an interest in it, it is not within the terms of the condition relied on; because 1. It was made *before the policy was issued.* The condition is to be construed strictly, and cannot be extended by implication to a case not embraced within the fair import of the terms thereof. (1 *Phil. on Ins.* § 107.) The rule governing the construction of all contracts, is that in case of doubt, the presumption is to be

against the party whose language it is, and that in determining the construction, regard is to be had to the subject matter, and the known motive for introducing the provision. Hence, when the assured made a general assignment of the property insured, and all his other property, including *"all policies of insurance,"* in trust for creditors, it was held it did not avoid the policy, upon the ground that such an assignment was substantially *the constituting an agency for applying the proceeds of the policy for the benefit of the assured.* (*Lazarus* v. *Gen. Int. Ins. Co.,* 5 *Pick.* 76. *Same* v. *Commonwealth Ins. Co.,* 19 *id.* 81.) So, also, an assignment *of the policy* after a loss, is not within the condition. (*Mellen* v. *Hamilton Fire Ins. Co.,* 17 *N. Y. Rep.* 609.) 2. The language of the condition evidently refers to assignments made *after the issuing of the policy.* (*a.*) The company's consent must be indorsed on the policy *before* the assignment can be made. (*b.*) The effect of the assignment is to cause the liability of the company to *cease thereafter.* It would be difficult to make a party's liability *cease before it was incurred.* (*c.*) The company reserve the right to consent, or to return a ratable proportion of the premium *for the time of the risk unexpired.* 3. The transaction is within the principle of the cases in 5 Pickering and 17 N. Y. Rep. above. 4. Where at the time the insurance is effected, the assured has entered into an agreement which will operate *eo instanti* the policy is issued, to vest in a third person a lien upon or an interest in the moneys which the insurer may become liable to pay, upon the policy, the insurer, under a policy like this, can protect itself against such transfer only by making suitable inquiries of the assured, and if deceived, by setting up his fraud in an action upon the policy. If there be no inquiry there is no fraud. Accordingly, where a common carrier, by his contract with the shipper, was entitled to the benefit of any insurance to be effected by the latter upon the goods to be carried, it was held that the contract was valid, and not a fraud upon the insurer, although

the contract was made before the insurance was obtained and without the knowledge of the insurer. (*Mercantile Ins. Co.* v. *Calebs,* 20 *N. Y. Rep.* 173.) 5. The court below rested its decision upon the case of *Smith* v. *The Saratoga Mutual Ins. Co.*, (1 *Hill,* 497.) But in that case the policy was issued in February, 1836. The assured assigned the policy September 17th, 1836. The loss occurred March 7th, 1839.

II. The admission by the company of its liability to pay the loss is a waiver of any forfeiture by reason of an assignment of the policy.

III. The agreement to keep the property insured for the benefit of the mortgagee is not an assignment *of the policy.* It operates only in equity, and as an appropriation *of the proceeds* of the policy to the mortgagee, in extinguishment of the mortgage. And although sometimes denominated an equitable assignment, it is not within the true interpretation of the condition. *A fortiori* an agreement to assign is not within the condition. That refers to an instrument which *per se* and without the aid of a court of equity passes the title to the policy. This principle has been frequently applied to the condition prohibiting any sale or alienation of the property insured. 1. Where a mortgage was given by the assured. (*Conover* v. *Mutual Insurance Co.*, 3 *Denio,* 254. 1 *Comst.* 290.) 2. Where a contract of sale was made by the assured, and the vendee went into possession. (*Masters* v. *Madison Co. Ins. Co.*, 11 *Barb.* 624.) 3. Where the property had been conveyed by a deed absolute on its face, but proven by parol to have been intended as a mortgage. (*Hodges* v. *Tenn. M. and F. Ins. Co.*, 4 *Selden,* 416. *See* also *Hooper* v. *Hudson River F. In. Co.*, 17 *N. Y. Rep.* 424; *Buffalo Steam E. Works* v. *The Sun Mut. Ins. Co.*, *Id.* 412; *Wilson* v. *Genesee Mut. Ins. Co.*, 16 *Barb.* 511.) In a recent case the general term in the seventh district intimate that the condition in question would not be affected "by an assignment *in invitum,* or *by operation of law,* but would be intended to mean a voluntary assignment. (*Dey* v. *Pough-*

*keepsie Mut. Ins. Co.,* 23 *Barb.* 623.)   4. An agreement to keep the property insured for the benefit of a vendee, to whom the assured had contracted to sell it, does not affect the rights of the assured to recover, and it follows that if the assured can recover, the rights of the vendee will be equally protected.   According to, in a case where it was found as a fact that the plaintiff had contracted to sell the property insured, and to keep it insured for the benefit of the vendee, of which defendant had no notice, it was held that the plaintiff was entitled to recover to the extent of the purchase money unpaid, at the commencement of the suit, although the court also held that the payment of the amount due on the contract during suit operated as a virtual, equitable assignment of the policy to the vendee.   (*Shotwell* v. *Jefferson Ins. Co.,* 5 *Bosw.* 247.)

IV. The agreement to keep the property insured *for the benefit of Chesley,* was an engagement that the proceeds of the policy, in case of loss, should be charged with or appropriated to the payment of the balance of the purchase money of the property, the right to enforce which became vested in the plaintiff.   1. No effect can be given to the agreement, except upon this construction.   2. As such, it operated as an equitable lien upon, or an equitable assignment *of the insurance money* in the event of a loss occurring; and a court of equity on a bill filed against the company and the assured, will decree payment by the former to the equitable assignee, upon the same principle that it enforces a trust. (*Story's Eq. Jur.* §§ 1041–1048, 1040 *b*, 1055.   *Hill on Trustees,* 446, 447.   *Parry* v. *Ashley,* 3 *Sim.* 97.   2 *Phil. on Ins.* §§ 1976–1981.   *Seymour* v. *Vernon,* 10 *L. and E. Rep.* 40. *Angel on Ins.* §§ 220–223, 62.   *Dickenson* v. *Phillips,* 1 *Barb. S. C. R.* 460.   *Vernon* v. *Smith,* 5 *B. & Ald.* 1.   *Hamilton* v. *McCoun,* 2 *Hall,* 522.   *Carter* v. *Rockett and The N. Y. F. Ins. Co.,* 8 *Paige,* 437.   *Richardson* v. *Rust,* 9 *Paige,* 244.)   The case of *Rogers* v. *Hosack's Executors,* (18 *Wend.* 319,) is not in conflict; because in that case Gracie himself

retained the power to collect the money, and merely promised to pay it himself to the creditors when collected. And this decision was afterwards greatly shaken. (*See* 25 *Wend.* 313; 9 *Paige,* 244.)

V. But whatever construction be put on the agreement, the plaintiff is entitled to a new trial, if the court are of opinion that it did operate to *transfer the policy ;* because the nonsuit was granted solely on the ground that the plaintiff had not proved the consent of the company to an assignment; and no objection was taken to a recovery upon the other grounds above stated.

*D. E. Wheeler,* for the respondent. I. The clause in question is valid and binding upon both parties. The contract of insurance is peculiarly a personal one, and the insurance company have a right to select the parties whom they will insure. (*Angell on Insurance,* §§ 199, 200, 201. 2 *Parsons' Maritime Law,* 45.)

II. It is clear on principle, and established by authority, that such a condition as that in this policy is broken by any assignment, equitable or legal, "by sale or otherwise," without the consent of the insurer. (*Smith* v. *Saratoga County Mutual,* 1 *Hill,* 497. *Id.* 3 *Hill,* 508. 1 *Phillips Ins.* 474, 3*d ed.* § 879, *ch.* 10, § 9. *Conover* v. *Albany Co. Mutual,* 1 *Comst.* 290. *Id.* 3 *Denio,* 254. *People* v. *Beigler, Lalor, Sup. to Hill & Den.* 133; 17 *N. Y. Rep.* 609. *See* 2 *Story's Eq.* § 1040 *c.*)

EMOTT, J. Francis Eichenlaube, who is one of the defendants, in November, 1852, made a contract with one Chesley to buy of him a lot of land in Brooklyn, with a house upon it, which Chesley was to build. The price was to be $1600. Eichenlaube paid $500 previous to the completion of the house, and the residue was to be paid by the execution of a mortgage on the premises. The house was completed in April, 1853, but Chesley was unable to make or

convey a title to Eichenlaube at the time, and it was there-
fore agreed that the latter should go into possession ; that
Chesley should convey, and receive back his mortgage as
soon as he.could perfect his own title ; and that, in the mean-
time, Eichenlaube should pay the interest upon the balance of
purchase money due, ($1100,) in the same manner as if he had
received a deed and given back a mortgage. Eichenlaube,
accordingly, went into possession under this agreement. It
was a part of the original contract that Eichenlaube should
have the house when completed, insured, and the policy as-
signed as collateral to the mortgage when executed. When
the performance of the original agreement was postponed,
and the new agreement made, by which Eichenlaube was to
take possession and pay interest until the title could be per-
fected, it was made a part of this agreement also that Eich-
enlaube should have and keep the buildings insured for the
benefit of, and as security to Chesley. In July, 1855, Eich-
enlaube procured the house to be insured by the Brooklyn
Fire Insurance Co. for $700, but never assigned the policy
to Chesley, or to the present plaintiff, who had by that time
succeeded to Chesley's rights, having purchased and taken
an assignment in September, 1854, from Chesley,· of all his
interest in the premises, and in the contract with Eichen-
laube. In September, 1858, the house was destroyed by fire,
the defendant's policy being still in force. Eichenlaube
made default in the payment of the purchase money, and
an action was commenced and judgment obtained against
him for $1037.68. This judgment the plaintiff has been
unable to collect. The plaintiff having given the defendants
notice of his claims, and of the facts in regard to them, after
the fire, but before payment of the insurance money was due,
has commenced this action against Eichenlaube and the in-
surance company, to assert an equitable lien upon the in-
surance money, and compel its payment by the company to
him. Eichenlaube has not appeared in the action, but the
insurance company defend, and have put in an answer

Cromwell *v.* Brooklyn Fire Insurance Co.

alleging that they had paid the loss to Eichenlaube, and also alleging a condition of the policy that it should become void if it should be transferred without consent of the insurers, and that no such consent had ever been given to a transfer from Eichenlaube to the plaintiff. At the trial, the facts as I have collected them from the complaint were admitted, and the policy was put in evidence, containing the ordinary condition against the transfer of the policy or of the interest of the assured therein, without consent of the insurers. The defendants gave no proof of the payment of the insurance money to Eichenlaube, but upon the other facts, as I have stated them, the plaintiff was nonsuited on the ground that he could not recover unless the company's consent to an assignment of the policy to him by Eichenlaube should be shown.

The effect of a breach of this condition, that is of an assignment of the interest of the assured without consent, is to avoid the policy and not merely the assignment. (1 *Hill*, 497.) If the condition is broken there can be no recovery upon the policy by any one. Such clauses and conditions in policies of insurance have been upheld by the courts, as within the power of parties to make, and a part of their contract when made. They have not, however, been liberally construed, and insurers are required to bring themselves strictly within them, in order to avail themselves of their protection. In *Mellen* v. *Hamilton Fire Insurance Co.* (17 *N. Y. Rep.* 609,) it was held that such a clause did not apply to a transfer of a policy or of the claim of the assured upon it, made after the happening of a loss. So also, it has been held that an executory contract for the sale of real property is not an alienation, within the meaning of a clause forbidding the assured to *alien* the insured premises by sale or otherwise. (11 *Barb.* 624.)

In the present case there has certainly been no formal or legal assignment of the policy by Eichenlaube. The condition under which this defense is made, forbids any assign-

ment of the interest of the assured in the policy by sale or otherwise, and any assignment of the policy without the consent of the defendants. The contract between Chesley and Eichenlaube bound the latter to assign his interest in the policy as security for the payment of the unpaid purchase money of the premises. We have a right to assume that if such an assignment had been made, it would have been made in conformity with the terms of the policy, and the consent of the company would have been obtained to it in due season. The contract between these parties was for a legal and not an illegal act; it was for a valid and sufficient assignment, and of course it implied that the assent of the insurance company should be duly obtained to a formal assignment of the policy when made. Eichenlaube, however, never made any assignment of the policy, or of his interest, to Chesley or to the plaintiff. All that he did was done before the policy was made, and that, as we have seen, was to agree to procure a policy of insurance, and to make a due and valid assignment of that policy to his creditor. If this operated as an assignment of the future policy, rendering it void, it may not be easy to see how the insurance could in any event be sustained, since before the policy was executed no consent could be had to its assignment. The doctrine of the defendants pressed to its logical results, would avoid the policy before it was issued, and that irretrievably.

This may be too strained or subtle a course of reasoning. But upon a broad view of the position of these parties, the plaintiff is not an assignee of the policy, nor does he assert a title to the moneys due from the defendants through its assignment, or a transfer of the interest of the assured. His claim is that Eichenlaube had agreed to insure the premises for his benefit, but that he has neither insured his vendor's interest nor assigned the policy to him, but having effected an insurance for his own benefit, and the property having been destroyed by fire, and the insurance money become payable, that the vendor has an equitable lien upon any such

insurance money due to his vendee in consequence of the original agreement between them. It will be observed that the question does not arise between Chesley or the plaintiff, and Eichenlaube or his creditors; nor is there any evidence of any payment to Eichenlaube. We are to determine the case as if no such payment had been made. Making such a payment indeed might seem to admit the validity of the policy, and to waive this condition; for the breach of the condition avoids the original contract, and not the assignment. If the insurance company is not liable to the plaintiff for the reason for which this nonsuit was granted, it is not liable to Eichenlaube, or to any one else.

In *Carter* v. *Rockett*, (8 *Paige*, 437,) Chancellor Walworth expressed the opinion that when the assured had made an agreement to insure for the protection of a third party, having an interest in the premises, such third party might acquire a lien upon the insurance money to the extent of his interest. Such a lien might be enforced upon such an agreement, against the debtor, in a case where no equities of other creditors intervened, although as against such creditors unequivocal proof of an assignment would be demanded. (*See Dickinson* v. *Phillips*, 1 *Barb. S. C. R.* 454.)

It is true, that in creating and enforcing such a lien, courts of equity proceed upon the ground that the acts of the parties, or the operation of the law, or both, will effect an equitable assignment of the subject of the lien. It is urged in this case that an equitable assignment of the policy of insurance is as much within the prohibition of the policy, and within the mischief it was intended to prevent, as a legal assignment; and it is contended that this is an answer to the present claim upon the insurance money. Without stopping to consider how far these premises would be true, it will be seen upon a little reflection that the conclusion does not follow, and that the argument is not applicable to a case like the present. The lien which is here asserted is not upon the policy, but upon the money which had become due under it.

Cromwell v. Brooklyn Fire Insurance Co.

The subject of the lien is the fund which is in the hands of the insurance company for the payment of the loss. The agreement was that the insured should make a valid and legal assignment of the policy, or of his interest in it. That creates a trust as to the money which has now become payable by this policy in consequence of the destruction of the insured property, and a lien upon this money. It operates as an equitable assignment of that fund to the plaintiff, but not as an assignment of the policy. Although there must be an equitable assignment of this fund, in order to an equitable lien upon it, or a trust for payment out of it, that is no more equivalent to an equitable assignment of the policy than a legal assignment or transfer of the money due after a loss is equivalent to a similar assignment of the policy, which was the question presented in *Mellen* v. *Hamilton Fire Ins. Co.* (17 *N. Y. Rep.* 609.) The lien which is claimed by the present plaintiff is upon a fund which is created by the concurrence of the destruction of the property insured, and the liability of the insurers to pay the amount of the loss by such destruction; while the defense of the insurance company goes to deny any liability of the insurers. Until that is disposed of no fund will exist of which an assignment could be made. The short answer to the objection is that the plaintiff is an equitable assignee of the fund, and not of the policy, and therefore not within the clause forbidding the transfer of the latter.

The defendants gave no proof, at the trial, of a payment of the loss to Eichenlaube, and we are not required or prepared to discuss any question which might arise out of such payment. I am of opinion that upon the facts now appearing the plaintiff was entitled to recover, and that the present nonsuit must be set aside and a new trial granted.

Brown, J. concurred. Lott, J. dissented.

New trial granted.

[Kings General Term, Feb'y 9, 1863. *Emott, Brown* and *Lott,* Justices.]