THE ATLANTIC INSURANCE COMPANY *vs.* JOSEPH CARLIN, use of the SECOND NATIONAL BANK OF CUMBERLAND.

*Evidence—Res inter alios acta—Condition in policy of Insurance—Acceptance and ratification of Agency—Agent of plaintiff and not of defendant in respect of certain acts—Adjustment of loss—Construction of language used by an Adjuster—Absence of recognition of Agency by defendant—Want of evidence that Preliminary proof of Loss was furnished within the Required time, or that the same was Waived.*

In an action on a policy of insurance on stock in trade in the plaintiff's mill at Frostburg, it was in proof that D. went to Frostburg to adjust the loss, and that the plaintiff, and Y. his miller, made out a particular account of the stock in trade in the mill and its value, which was sworn to by both of them, and that afterwards Y. went to Baltimore, and there at the instance of D. who did not represent the defendant, out of the presence of the plaintiff, and without his knowledge, made an affidavit to an account of the stock in the mill at the time of the fire, and its value, by which it was shown that the stock in the mill had been of much less value than was made to appear by the account furnished to D. at Frostburg. The account and affidavit made in Baltimore were offered in evidence by the defendant Company. On objection by the plaintiff, it was HELD :

That the account and affidavit were *res inter alios acta*, and were inadmissible to affect the rights of the plaintiff; they were not binding on him.

In an action on a policy of insurance on stock in trade in the plaintiff's mill at Frostburg, issued by the Atlantic Insurance Company, the proof showed that the defendant Company had no agent at Frostburg, but that R. & Son were its agents at Baltimore. Rigby was agent of the Royal Canadian Insurance Company at Baltimore, and Sanner, its sub-agent at Frostburg in 1877, and Metzger in 1878. In 1877, the plaintiff applied to Sanner for a renewal of his

Atlantic Insurance Company *vs.* Carlin.

policy in the Royal Canadian for $3000.  The application was sent to Baltimore to Rigby its general agent, who in response thereto, sent back to Sanner a renewal in the Royal Canadian for $1500, stating that his company was unwilling to take so large a risk as $3000; and a policy in the defendant Company for $1500, which he had procured for the plaintiff.  On the arrival of these policies at Frostburg, Sanner sent them to the plaintiff by Metzger, who was going near the plaintiff's mill, and who delivered them to him, and received from him the premiums on both policies, and delivered the same to Sanner, who remitted them to Rigby in Baltimore.  In April, 1878, the plaintiff spoke to Metzger, then subagent of the Royal Canadian at Frostburg, and requested him to procure renewals of both policies.  He communicated with Rigby who sent on the renewal in the Royal Canadian, and shortly afterwards a renewal in the defendant Company also.  The renewals came through Metzger, who delivered them to the plaintiff and received the premiums, and remitted as had been done in the previous year.  In June following, the mill and its contents were totally destroyed by fire.  The plaintiff saw Metzger and said to him that it would be necessary for him to give notice in writing to both companies, and Metzger replied "yes; but that the plaintiff need not trouble himself about the matter," that he Metzger would give the notice.  During all this time, Metzger was also agent for the Western Insurance Company of Toronto, in which company the plaintiff held an insurance on the machinery in his mill.  Metzger in a few days thereafter told the plaintiff that he had heard from Rigby, who would shortly send up an adjuster; and very soon thereafter, Deming arrived and was introduced to the plaintiff by Metzger as the "adjuster."  Deming prepared the papers, the plaintiff and Y., his miller, making out a statement of the stock, &c. in the mill at the time of the fire; and the plaintiff alleged that he swore to only one set of papers for loss on stock, and another for loss on machinery.  When Deming was about to leave Frostburg, he told the plaintiff that if the proof of loss should prove not to be satisfactory to the company, and anything further should be required he would notify him.  No proof of loss was ever furnished to the defendant until about five months after the fire occurred, and three months after the plaintiff had been informed that he had furnished none to it.  In the eighth condition of the policy sued on, it was provided that "it is a part of this contract that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under

any circumstances whatever, or in any transaction relating to this insurance." ¦ HELD:

1st. That the facts of the case justified the application of the above condition to the plaintiff.

2nd. That Rigby and Sanner were made the agents of the plaintiff with respect to procuring the policy in the defendant Company in 1877, by his acceptance of it, which was a ratification of what they had done in his behalf. He also made them his agents in paying the premium thereon to R. & Son, who, he was informed by the policy itself, was the agent of the defendant.

3rd. That Metzger in respect of the application to him in 1878 by the plaintiff for a renewal of his policy by the defendant, as well as in remitting the premium thereon, was the agent of the plaintiff and not of the defendant.

4th. That in the adjustment of the loss the plaintiff had no reason to believe that the defendant was represented by any one.

5th. That when Deming told the plaintiff that if the proof of loss taken was not satisfactory to the company, and if anything further should be required, he would give him notice, he had reference to the Company he represented, and the plaintiff had no right to infer that he had reference to another Company for which he had no authority to act.

6th. That there was nothing in the proof in the case to warrant the Court in holding that either Sanner, Metzger, Rigby or Deming was ever treated by the defendant as its agent for any purpose, or that it ever held either of them out to the public or to the plaintiff as its agent.

7th. That there was no evidence in the case to show that such preliminary proof of loss, as was required by the ninth condition of the policy sued on, was furnished to the defendant, within the time, and as required by the said condition; or that said condition was waived by the defendant.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The *first exception,* and the question involved in the *second* and *third exceptions* are stated in the opinion of the Court.

Atlantic Insurance Company vs. Carlin.

*Fourth Exception.*—The plaintiff asked the following instruction, which was given by the Court (GILMOR, J.:)

If the jury believe from the evidence in the cause, that the plaintiff having obtained an insurance of $3000 in the Royal Canadian Insurance Company, on the stock contained in his mill at Frostburg, for one year, from the 1st day of April, 1876; that he applied to the general agent of said company for a renewal of the same, on or before the 1st day of April, 1877; that in reply to said application, the said general agent forwarded to their local agent at Frostburg, a policy for $1500, in the said Royal Canadian Company, and also a policy for a like amount in the office of defendant; that said local agent delivered the said policies to the plaintiff, and received from him the premiums on said two policies, and forwarded the same to the said general agent at Baltimore, who receipted therefor, and who, on the expiration thereof, again renewed the same, and gave receipts for the premiums thereon, and paid the said local agent his commissions for the transactions of said business; that at the date of the fire, (13 June, 1878,) the said policy of defendant was in full force; that the local agent who had procured said insurance and received said premiums, undertook to the plaintiff to notify the offices in which the said stock was insured, of the fire, and did so notify them; that the said local agent within a day or two thereafter, informed the plaintiff that an adjuster would arrive in a day or two; that said adjuster did so arrive, and filled up the blanks of proofs of loss offered in evidence, for the said Royal Canadian Company; that the said plaintiff supplied the itemized account of loss, and made the necessary affidavit thereto, and in all respects complied with all the requirements of the policy; and that said adjuster informed him (plaintiff) that if anything more were required, that the plaintiff would be notified in writing, and he was not so notified; that the plaintiff was not informed that the said

Atlantic Insurance Company *vs.* Carlin.

proofs of loss were not intended for the office of the defendant, then the plaintiff is entitled to recover for the loss sustained against the defendant, notwithstanding they may find that the proofs of loss were not furnished to the defendant before the 26th day of November, 1878, unless they find from the evidence that the said account so furnished was wilfully and fraudulently false.

The defendant offered five prayers, the first and second of which as follows, were refused; the third was granted, the fourth withdrawn, and the fifth conceded.

1. That there is no evidence in this case to show that such preliminary proof of loss, as is required by the ninth condition of the policy offered in evidence by the plaintiff, was subsequent to the fire furnished to the defendant, within the time and as required by the said condition; and there is no evidence that said condition was waived by said defendant, and the plaintiff is not entitled to recover.

2. That there is no evidence in this cause that such preliminary proof of loss, as required by the ninth condition of the policy offered in evidence by the plaintiff, was furnished by said Carlin, as required in said condition, and that there is no evidence that such preliminary proof of loss was waived by the defendant, and that the plaintiff is not entitled to recover in this suit.

To the refusal of the Court to grant its first and second prayers, and to the granting of the plaintiff's prayer, the defendant excepted. The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, ROBINSON and IRVING, J.

*Frank Gosnell,* and *Thomas M. Lanahan,* for the appellant.

*Geo. Hawkins Williams,* for the appellee.

GRASON, J., delivered the opinion of the Court.

This suit was brought on a policy of insurance on stock in trade in the appellee's mill at Frostburg, Maryland; the contract of insurance was specially declared upon, and the defendant pleaded that it never was indebted as alleged; that it never promised as alleged, and that the plaintiff did not within thirty days next after the happening of the fire, render to defendant a particular account and proof thereof, of his alleged loss or damage, according to the form and effect of the ninth condition of said agreement or policy of insurance.

At the trial in the Superior Court of Baltimore City, four exceptions were taken by the appellant, the three first to the rulings of the Court upon questions of evidence, and the fourth to the granting of the appellee's prayer, and to the refusal to grant the appellant's first and second prayers.

It appears from the record that after the fire, a Mr. Deming went to Frostburg to adjust the loss, and that the appellee and his miller, a Mr. Young, made out a particular account of the stock in trade in the mill, and its value, which was sworn to by both of them, and that afterwards Young went to Baltimore City, and there made an *ex parte* affidavit to an account of the stock in the mill at the time of the fire, and its value, by which it was shown that the stock in the mill had been of much less value than was made to appear by the account furnished to Deming at Frostburg. The account and affidavit so made in Baltimore City, was offered as evidence by the appellant, and was objected to by the appellee, and ruled out by the Court; and this ruling forms the subject of the first exception. It is very evident that this account and affidavit were inadmissible to affect the rights of the appellee. They were prepared at the instance of the adjuster of the Royal Canadian Insurance Company out of the presence of the appellee, and without his knowledge. They were *res inter alios acta,* and not binding on him.

The proper mode of proving that the account and affidavit furnished to Deming at Frostburg, was fraudulent and false, was to produce Young in Court at the trial as a witness, or his evidence, taken under a commission, issued for that purpose, if his presence could not be procured. His *ex parte* affidavit was not admissible for that purpose. His evidence was taken by consent under a commission, and was used at the trial, so that the appellant had the full benefit of it.

The second and third exceptions involve the question of agency, which is also presented by the prayers, and they will therefore be considered together. The proof shows that the appellant had no agent at Frostburg, but that Richardson & Son were its agents at Baltimore City. Rigby was agent of the Royal Canadian Insurance Company at Baltimore, and Sanner its sub-agent at Frostburg in 1877, and Metzger in 1878. In 1877, the appellee applied to Sanner for a renewal of his policy in the Royal Canadian for $3000. The application was sent to Baltimore to Rigby, its general agent, who afterwards sent back to Sanner a renewal in the Royal Canadian for $1500, stating that his company was unwilling to take so large a risk as $3000. He also at the same time sent a policy in the Atlantic Fire Insurance Company for $1500, which he had procured for the appellee. At that time Metzger was carrying on the book and stationery business with Sanner, but had no connection with him in the insurance business. On the arrival of these policies at Frostburg, Sanner sent them to the appellee by Metzger, who was going near the appellee's mill, and who delivered them to him, and received from him the premiums on both policies, and delivered the same to Sanner who remitted them to Rigby in Baltimore.

In April, 1878, the appellee spoke to Metzger, then sub-agent of the Royal Canadian at Frostburg, and requested him to procure renewals of both policies. He

·communicated with Rigby, who sent on the renewal in the Royal Canadian, and shortly afterwards a renewal in the appellant Company also.

The renewals came through Metzger, who delivered them to the appellee and received the premiums, and remitted as had been done the previous year. In June following, the mill and its contents were totally destroyed by fire. The appellee saw Metzger and said to him that it would be necessary for him to give notice in writing to both companies, and Metzger replied yes; but that the appellee need not trouble himself about the matter, that he, Metzger would give the notice. During all this time Metzger was also agent for the Western Insurance Company of Toronto, in which company the appellee held an insurance on the machinery in his mill. Metzger, in a few days thereafter, told the appellee that he had heard from Rigby, who would shortly send up an adjuster, and very soon thereafter Deming arrived and was introduced to the appellee by Metzger as the "adjuster." Deming made out the papers, the appellee and Young, his miller, making out a statement of the stock, &c. in the mill at the time of the fire, and the appellee says that he swore to only one set of papers for loss on stock, and another for loss on machinery. When Deming was about to leave Frostburg, he told the appellee that if the proof of loss should prove not to be satisfactory to the company, and anything further should be required, he would notify him. No proof of loss was ever furnished to the appellant until late in the month of November, about five months after the fire occurred, and three months after the appellee had been informed that he had furnished none to it.

In the eighth condition of the policy it is provided that "it is a part of this contract, that any person, other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in the policy, and not of this com-

pany under any circumstances whatever, or in any transaction relating to this insurance."

The facts of this case fully justify the application of the above condition to the appellee. He applied in 1877 to Sanner, the agent of the Royal Canadian at Frostburg, for a renewal of his policy of $3000 in that company. Rigby, its general manager and agent at Baltimore, in response to this application, forwarded to the appellee through its agent at Frostburg, not a renewal in that company, but *two* policies, one for fifteen hundred dollars in the Royal Canadian, and one for the same amount in the appellant Company. Rigby and Sanner were made *his,* the appellee's agents, with respect to the procuring of the latter policy, by his acceptance of it, which was a ratification of what they had done on his behalf. He also made them his agents in paying the premium thereon to Richardson & Son, who, he was informed by the policy itself, was the agent of the appellant. So again in 1878, as a matter of convenience to himself, he applied to Metzger for a renewal of his policy by the appellant, at the same time at which he applied for a renewal in the Royal Canadian. In this respect, as well as in remitting the premium, he was the agent of the appellee and not of the appellant. It is equally clear that in the adjustment of the loss, the appellee had no reason to believe that the appellant was represented by any one. Both Metzger and Deming swear that nothing was said about the appellant; it was not named by them, and that they did not represent that company. When Deming told the appellee that if the proof of loss taken was not satisfactory to *the company,* and that if anything further should be required he would give him notice, he had reference to the company he represented, and the appellee had no right to infer that he had reference to another company, which he had no authority to act for.

The appellee knew that Metzger and Rigby were the agents of the Royal Canadian, and he also knew that

Atlantic Insurance Company *vs.* Carlin.

Richardson & Son were the agents of the appellant, because his policy and its renewal were countersigned by them and the renewal receipt also. Knowing these facts, and having no knowledge that the appellant was represented by any one, he seems to have given himself no concern about the appellant; made no inquiries, and neglected to furnish it with any proof of loss for five months after the fire, and did not furnish any for three months after he knew that they had never received any, when by the ninth condition of the policy he knew it was obligatory upon him to furnish the proof in thirty days after the fire; and when by the express terms of his contract it was provided "that no investigation of the loss by the company, or any person appointed by them, shall be deemed a waiver of the requirements."

While the law is well settled that if an insurance company treats a party as its agent, (though he be not so in fact,) and receives the benefit of his acts, it will be estopped from denying his agency; yet there is nothing in the proof in this case, which will warrant this Court in holding that either Sanner, Metzger, Rigby or Deming was ever treated by the appellant as its agent, or that it ever held either of them out to the public or to the appellee as its agent. The facts are in no respect similar to those in the cases referred to in the appellee's brief and argument. There is in this case no question of a waiver of notice or proof of loss as in the cases of *Franklin Ins. Co. vs. Chicago Ice Co.,* 36 *Md.,* 119; *Rokes vs. Amazon Ins. Co.,* 51 *Md.,* 523, 524; *Ins. Co. vs. McCain,* 96 *U. S. Reps.,* 86; *Ins. Co. vs. Eggleston,* 96 *U. S. Reps.,* 578; *Priest vs. Citizens Mut. Ins. Co.,* 3 *Allen,* 605; *Sexton vs. Montgomery Ins. Co.,* 9 *Barb.,* 200.

In *Wood on Insurance, sec.* 398, it is said that "if an agent is permitted to receive and remit premiums for an insurance company, he is authorized to do so, and the company is bound by his acts within the scope of his

apparent authority, even though his acts are, in fact, in excess of his real authority, or in disobedience of private instructions given by the company," and he refers to *Perkins vs. Washington Ins. Co.*, 4 *Cowen*, 645. But in that case Russell was the acknowledged agent of the company for some purposes, and was in the habit of receiving, and remitting premiums for insurance to the president of the company and signing himself as *agent*, and holding himself out to the people of Savannah as agent, and from these facts the Court decided that the people of that city, of whom the appellant in that case was one, had a right to suppose that he *was agent*, with power to bind the company. And so in all the cases, in which it has been held that the company was bound by acts of its agents, the acts have been performed by a person, who, for *some purposes*, was the actual and acknowledged agent of the company, from the binding force of whose acts the companies have sought to escape, by showing that the acts done were in excess of the agent's authority. But in this case neither Sanner, Metzger, Rigby nor Deming, ever was agent of the appellant for any purpose whatever, and never acted as such agent or held himself out to the public as such agent. As has been already said, Sanner, Metzger and Rigby acted as agent for the appellee in procuring his policy from the appellant, and in remitting the premium therefor to Richardson & Son, the agent of the appellant at Baltimore, and they never professed to act for the appellant in any respect whatever. It was contended that, where several companies held risks at a particular place, and an adjustment of loss was to be made, it was the custom for all the companies to unite upon one and the same person to adjust the loss. But the proof does not sustain such contention.

It follows from what has been said that the prayer of the appellee ought to have been refused, and the first and second prayers of the appellant ought to have been

granted, and that the letters admitted in evidence ought not to have been admitted, they being the letters of the appellee's own agents, and therefore not admissible as evidence against the appellant. The judgment appealed from will be reversed without an award of a new trial.

*Judgment reversed.*

(Decided 16th June, 1882.)

MILLER, J., dissented.