# Sellers v. Commercial Fire Insurance Company.

*Action on Fire Insurance Policy.*

1. *Agency; burden of proof.*—Agency is a fact, the burden of proving which rests upon the party affirming its existence ; and it must be proved by other evidence than the acts or declarations of the supposed agent, before it can be assumed that he represents and has authority to affect or bind the principal. When the facts are ascertained the existence of agency, *vel non*, is a question of law.

2. *Same; misstatements in application written by agent of company do not avoid policy of insurance; estoppel.*—When an application for insurance is made to an agent of an insurance company who has authority to solicit insurance or to receive applications therefor, and he, voluntarily or at the request of the applicant, writes the answers to the questions contained in the application, and though the applicant answers them truthfully and correctly, said agent, through negligence or mis-

[Sellers v. Commercial Fire Insurance Company.]

take, or intentionally, inserts therein matter which is untrue, the insurance company is estopped from insisting on the falsity of such matter to avoid its liability on a policy issued on such application, and can not take advantage of the falsity or incorrectness of such answers, although the policy is based on their truth, and declares them to be warranties; and this is true, although the policy declares that when the application is made through an agent he shall be deemed the agent of the applicant, or the applicant shall be responsible for his representation.

3. *Same; same; when insurance company not estopped.*—Agency springs from contract, the consent of the principal, express or implied, being essential to its creation; and if an insurance company has not clothed a supposed agent with any authority, real or apparent, the acts and declarations of such person, as to the company, are *res inter alios acta*, not affecting the company, and the said insurance company can not be estopped from asserting a contractual right by the acts, declarations or mistakes of such person.

4. *Insurance broker.*—An insurance broker is one who acts as a middleman between the insured and insurer, and who solicits insurance from the public, under no employment from any particular company, but who, when he secures an application, places the insurance with the company selected by the applicant, or, in the absence of such selection, with the company he, the broker, may select; and a broker may receive his compensation for placing the insurance either from the insured or from the insurer or its agent by special arrangement for commissions.

5. *Same; when shown to exist.*—Where in an action founded on a policy of insurance, it was shown that the plaintiff applied for the insurance to a certain firm, who were not the agents or in the employment of any insurance company, but who had an arrangement with agents of the defendant that for all insurance secured by them, which was accepted by defendant, said agents would divide commissions. The plaintiff did not designate any particular company in which he wished to insure. The firm applied to did not represent themselves to be, or assume to act as the agents of defendant; but after the application was prepared by one of the firm on a form bearing the imprint of another company and was signed by the applicant, such member delivered it to the agents of the defendant who issued the policy countersigned by them and delivered it to the firm, who delivered it to plaintiff and received from him the premium thereon. *Held:* that said firm acted as insurance brokers, and were the agents of the plaintiff, empowered to negotiate the insurance with any insurer willing to take the risk, and by the acts of such brokers, as his agents in procuring such insurance, the plaintiff is bound.

.6. *Same; his misrepresentations avoids the policy.*—Where an application for insurance is made to an insurance broker, who, as agent of the insured, negotiates the insurance, misrepresentations as to the property or its location made by such broker while writing the an-

[Sellers v. Commercial Fire Insurance Company.]

swers of the insured to the questions contained in the application can not invalidate the warranty of the application; but such misrepresentations, being the act or fault of the insured, or his agent, render the policy void.

7. *Action on insurance policy; when evidence as to statements made in the application inadmissible.*—Where in an action on an insurance policy the defense interposed is a breach of the warranty in the application in regard to the condition and situation of the property insured, and it is shown that the plaintiff applied for his insurance to an insurance broker, who wrote down the answers of plaintiff to the questions contained in the application, and there is no evidence that said broker was the agent of the defendant when he prepared the application, but it affirmatively appears that the broker was the agent of the plaintiff, evidence that at the time of making the application the plaintiff did not make the statement contained therein with reference to the property to be insured, is inadmissible.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

This suit was brought by the appellants, J. S. Sellers & Sons, against the appellee, the Commercial Fire Insurance Company, and was founded on a policy of insurance against loss or damage by fire, covering a storehouse and a stock of merchandise therein. The defendant filed special pleas, which set up in substance the following defense: That the insurance was issued upon a written application in which plaintiffs warranted and agreed with the defendants that the statements therein contained were a just, full and true exposition of all the facts and circumstances in regard to the condition, situation and valuation of the property, and that such statements should be a warranty on the part of the plaintiffs. The plea then alleges that in the application it was stated, and that statement was made a condition of insurance and a warranty on the part of applicant, that the storehouse was situated on the plantation of assured, five miles from Ada; and then averred that that statement was untrue; that the storehouse was not situated on the plantation, but was on a lot in a certain village or hamlet known as Fleta, and that the situation of the storehouse was known to the plaintiffs at the time they made the application.

To this plea the plaintiffs filed a special replication, in which they averred that they made a full and true exposition of the facts in regard to the location of the property

to the agents of defendant, from whom they obtained the policy ; that they stated to him that the storehouse was situated about five miles from Ada, and it was known as a plantation store ; that they also stated to him that the storehouse was located on about half an acre of land near the J. S. Sellers' plantation. By an amendment to the replication it was averred that at the time the statements were made by plaintiffs to defendant's agent as to the location of the property, the agent stated that he had written in the application the facts as stated by the plaintiffs, and upon such representation plaintiffs signed the application for the insurance, being induced to sign the application as it was written by the alleged fraudulent representation of defendant's agent.

On this replication defendant took issue ; and also filed a special rejoinder, in which it alleged that in and by the policy sued on it was expressly provided that the assured, by accepting the same, warranted any application or statement connected with procuring the insurance to be true ; and it was further provided that the defendant should not be bound by any act or statement made to any agent which was not contained in the policy or in the application or statement. The rejoinder then averred that the application or statement referred to in the plea was connected with the procurement of the policy, and that the plaintiffs accepted the policy containing the provisions and terms above set out. On this rejoinder the plaintiffs also took issue.

The application for insurance, which was introduced in the evidence, described the storehouse as situate on the plantation of the insured, five miles from Ada, Ala.; and by the terms of the application, its statement in regard to the conditions, situation and value of the property, were declared "a condition of the insurance and a warranty on the part of the applicant." The storehouse was not situated on the plantation of the insured, but was situate on a half acre lot, the property of the insured, near a plantation the property of J. S. Sellers, a member of the partnership occupying the same.

J. S. Sellers, a member of the plaintiff firm, testified that on the 5th day of April, 1892, he was in the city of Montgomery, and on the street met J. B. Trimble of the firm of J. B. Trimble & Co., who were insurance agents, and spoke to him about placing insurance on the

[Sellers v. Commercial Fire Insurance Company.]

storehouse, and accompanied him to the office of Trimble & Co. That he stated to Trimble that he wished insurance on the storehouse and the merchandise therein. That he described the storehouse as situate about five miles from Ada, near to his plantation, on a half acre lot, the property of the partnership, and did not state to him that it was situated on the plantation of the partnership. While they were talking Trimble filled up the application, and when he had finished writing handed it to him to be signed. Before signing, he asked Trimble if he had written all the facts as he had stated them, and upon the assurance that the facts were so written, he signed the application without reading it. Afterwards, on the 10th of April, 1892, Trimble & Co. delivered him the policy of insurance, and he paid them the premium thereon. The witness further testified that Trimble & Co. were not employed by plaintiffs as their agents to procure the policy of insurance.

George W. Stuart, a member of the firm of Trimble & Co., as a witness for the plaintiffs, testified that on the 5th day of April, 1892, the said J. S. Sellers applied to him to obtain a policy of insurance on the storehouse and merchandise of the plaintiffs. Under the directions of said Sellers he filled up the application on which the policy was issued. That the description of the location of the store-house, as well as everything written in the application, was written as directed by said Sellers, and after it was written was read to him, and he signed thereto the firm's name of the plaintiffs. That the said J. B. Trimble was not present when Sellers applied to obtain the insurance, and had no part in filling up the application. After the application was signed, he carried the same to Holt & Abercrombie, who were the agents of the defendant, and obtained the policy of insurance, which is countersigned by said Holt & Abercrombie, as such agents of defendant. A few days thereafter, he delivered the policy to said J. S. Sellers, on the payment of the premium therefor. Trimble & Co. made no charge against the plaintiff for obtaining the policy, but they had an arrangement with Holt & Abercrombie, and other insurance agents in the city of Montgomery, by which they received a share of the commissions to which such agents became entitled, on all policies of insurance issued on applications which they carried to

such agents. Trimble & Co. were never the agents of the defendant; and so far as he knew, the defendant had no notice or knowledge of the arrangement between Trimble & Co. and Holt & Abercrombie.

Upon the plaintiffs announcing that this was all the evidence they had, tending to show that Trimble & Co. were agents or representatives of the defendant, the defendant moved the court to exclude the testimony of the witness Sellers, "that at the time of making the application he had stated to the party to whom the application was made, that the storehouse was located on a half-acre lot belonging to plaintiffs' firm, and had not stated that it was located upon the plantation." The court sustained this motion, to which ruling the plaintiffs duly excepted. Thereupon the plaintiffs took a non-suit with a bill of exceptions.

Judgment was rendered for the defendant, and plaintiffs appeal, and assign as error the ruling of the court upon the evidence, to which exceptions were reserved.

CHAS. WILKINSON and SAYRE & PEARSON, for appellants.—If J. B. Trimble & Co., in writting the answers of the plaintiffs to questions contained in the application, were the agents of the insurance company, fraud on their part, or mistake could not affect the right of the insured to recover on the policy. Generally, in such instances, the agent is treated as the agent of the insurer, notwithstanding a stipulation in the policy that the person securing the policy should be considered the agent of the insured.—Creed v. Sun Fire Office 101 Ala. 522; 11 Amer. & Eng. Encyc. of Law, 324 and authorities cited in note 2, 334. And this has been held to be the law in cases of sub-agents appointed by a local agent without more.—Commercial Ins. Co. v. Ives, 56 Ill. 402; Woodbury Sav. Bank v. Charter Oak Ins. Co., 31 Conn. 517.

TOMPKINS & TROY, contra.—The evidence offered by the plaintiffs that they did not make the statements contained in the application, which was written by J. B. Trimble & Co. could only be introduced for the purpose of sustaining the averment in the special replication that the location of the storehouse had been correctly stated to the agents of appellee. Of course, an absolutely

indispensible prerequisite to the admission of a declaration of that character was some proof tending to show that the party to whom it was made was, at the time, the agent of the appellee. If there was no proof of such agency, then it follows conclusively that the declaration was not admissible against appellee. Neither Trimble nor Stuart were the agents of appellee. It does not appear that appellee ever knew them in any of its transactions. The policy went from defendant through their regular agents, and the policy itself, which was introduced in evidence, is countersigned by Holt & Abercrombie, as agents for appellee. No one can be made the agent of another without that other's knowledge or consent. The consent may be implied, but it must be shown that the party who is sought to be charged as principal had some knowledge of the fact that the party, by whose acts it is sought to bind him, was acting as his agent. Here the testimony shows that neither Stuart nor Trimble ever acted or pretended to act as the agent of appellee. The decisions on this point are uniform.—*Fame Ins. Co. v. Mann*, 4 Bradwell 485 ; *King Co. Ins. Co. v. Swigert*, 11 Bradwell 590 ; *Pottsville Ins. Co. v. Minnequa &c. Imp. Co.*, 100 Pa. St. 137 ; *Hartford Fire Ins. Co. v. Reynolds*, 36 Mich. 502. Even had Holt & Abercrombie undertaken to delegate to Stuart or Trimble the right to bind the appellee, they could not have done so, and notice to Trimble or Stuart would not have been notice to appellee.— *Waldman v. N. B. & M. Ins. Co.*, 91 Ala. 170.

BRICKELL, C. J.—It is obvious the admissibility of the evidence excluded is to be tested by the inquiry whether Trimble & Co., when a member of the firm prepared the application for insurance in which occurred the misdescription of the location of the storehouse, were the agents of the defendant. If there was legal evidence having a tendency to support the affirmative of this inquiry, the evidence excluded ought to have been received, leaving the jury to pass upon its sufficiency and credibility, however much may have been the conflict in the evidence touching the transaction to which it related. If there was an absence of such evidence, or, if the legal evidence, without conflict, showed that in the preparation of the application and the procure-

ment of the insurance, Trimble & Co. were the agents of the plaintiffs, the evidence was properly excluded. "*Res inter alios acta nocere non debit,*" is a maxim of the law of evidence of great practical usefulness, and of the highest importance. "On a principle of good faith and mutual convenience, a man's own acts are binding upon himself, and are, as well as his conduct and declarations, evidence against him ; yet it would not only be highly inconvenient, but also manifestly unjust, that a man shall be bound by the acts of mere unauthorized strangers ; and if a party ought not to be bound by the acts of strangers, so neither ought their acts or conduct to be used as evidence against him."—Broom's Legal Maxims, 954. Hence, agency is a fact, the burthen of proving which rests upon the party affirming its existence ; and it must be proved by other evidence than the acts or declarations of the supposed agent, before it can be assumed that he represents and has authority to affect or bind the principal.—1 Brick. Dig. 54, § 9 ; 2 Wood Fire Ins., § 420.

Contracts of insurance are usually negotiated by the insurer through the intervention of agents ; and this is so of necessity, when, as is now almost universally true, the insurer is an incorporated company. The company can act only through its officers and agents ; and to the officers and agent representing it at its principal place of business, it has the power to add any number of special or general agents it may deem proper. It is these agents with whom the insured frequently negotiates insurance, and upon whom reliance is placed. The doctrine now generally accepted is that when an agent of a company, having authority to solicit insurance, or to receive applications for insurance, voluntarily, or at the request of the applicant, assumes to prepare the application and by negligence, or mistake, or intentionally, inserts therein matter which is untrue, the applicant having truly stated the matter, procuring the signature of the applicant to the application, if the company receives the application and premium and issues the policy, in the event of loss, it will be estopped from insisting on the falsity of the matter to avoid liability, though the truth of the matter may be warranted by the insured. And this is true, though the policy may declare that when the application is made through an agent, he shall

be deemed the agent of the applicant, or that the applicant shall be responsible for his representations.—*Union Mut. L. Ins. Co. v. Wilkinson*, 13 Wall. 231; *Am. L. Ins. Co. v. Mahone*, 21 Wall. 152; *Ala. Gold Life Ins. Co. v. Garner*, 77 Ala. 210; *Williamson v. N. O. Ins. Association*, 84 Ala. 106; *Creed v. Sun Fire Office*, 101 Ala. 522; May on Insurance, (2d Ed.), § 143.

The doctrine necessarily rests upon the hypothesis, that the person by whose acts, declarations, or mistake, the company is to be estopped, was its actual agent for *some purpose;* having *some authority* to represent and bind it in the transaction of some part of its business.—*Atlantic Ins. Co. v. Carlin*, 58 Md. 336. When it is found there was an agency, as to third persons dealing with the agent in good faith, as to all matters within the scope of his apparent or real authority, the company is bound.—2 Wood on Fire Insurance, § 408; May on Insurance, (2d Ed.), § 126. Agency springs from contract, and the consent of the principal, express or implied, is as essential to its creation, as it is to the constitution of any other contract.—Wharton's Law of Agency, § 1. If the consent of the principal has not been yielded; if he has not clothed the supposed agent with any authority, real or apparent, the acts or declarations of such person as to the principal, are *res inter alios acta;* and for them, whether the principal be a natural person, or a corporation, whatever may be the business transacted, the principal can not without manifest injustice be affected.

The undisputed facts are, that the plaintiffs applied to Trimble & Co. for insurance of the storehouse and stock of merchandise. From whom, or from what company, the insurance was to be obtained, or the rate of premium to be paid, was not the subject of negotiation. There was no representation by Trimble & Co. that they were agents, or that procuring insurance from the defendant was contemplated. So far as appears from the evidence the defendant had not invested them with any real or apparent authority. The application was prepared on a form bearing the imprint of another company, indicating that they had not the forms of the defendant, or that to what particular company the form pertained was immaterial in the view of the parties. They were not and had never been agents of the defend-

ant, and had never assumed to act in that capacity. These were the facts attending the application, and the mere statement of them negative an agency for the defendant, and shows affirmatively that Trimble & Co. were the agents of the plaintiffs, empowered to negotiate the insurance for them, with any insurer willing to take the risk. The very nature of the transaction involved in the agency; and the possession of the application was an *indicium* of the agency, inviting insurers to deal with them as the agents of the plaintiffs. The denial by one of the plaintiffs, who was examined as a witness on the trial, that Trimble & Co. were the agents of the plaintiffs, was the mere expression of opinion, not supported by the undisputed facts, and to it no importance can be attached. When the facts are ascertained, agency, *vel non*, is matter of law.

There is no difficulty in ascertaining the real relation of Trimble & Co. As to each of the parties they were essentially, and acted as insurance brokers. In *Arff v. S. F. Ins. Co.*, 125 N. Y. 63, it is said: "What is understood under the designation of an insurance broker is one who acts as a middleman between the insured and the company, and who solicits insurance from the public, under no employment from any special company, but having secured an order he either places the insurance with the company selected by the insured, or in the absence of any selection by him, then with the company selected by such broker. Ordinarily, the relation between the insured and the broker, is that between the principal and his agent."

It does not appear that Trimble & Co. were the agents, or in the employment of any company. The only connection they had was with the agents of the defendant by whom the application was received, and who issued the policy, and they had the same connection with all other insurance agents in the city of Montgomery. This connection was an arrangement they had with these agents, that if they presented an application for insurance, and the agent accepted the risk, and issued the policy, there was division of the commissions the agent was entitled to receive from the company he represented. Ordinarily, a broker receives his compensation from his principal; but that by an arrangement or agreement with the insurer, or with an agent of the insurer, he obtains

from either his compensation, does not change his relation to his principal. The authority confided to him is not diminished, and he is bound to the same duties, and subject to the same responsibilities, as if the compensation was derived immediately from the principal. In the cases of *Mellen v. Hamilton F. Ins. Co.*, 17 N. Y. 609, and *Devens v. Mechanics & T. Ins. Co.*, 83 N. Y. 168, it appeared that there was an arrangement between the insurer and the broker, similar to that which existed between Trimble & Co. and the insurance agents in the city of Montgomery. If the broker presented an application for insurance the insurer was willing to receive and issue a policy, he paid the broker a commission thereon. It was held, the broker was not to be deemed an agent of the insurer; that he was not in his employment; and that upon the receipt of the premium and the delivery of the policy, his connection with the insurer ceased. The policy which was issued and delivered to the plaintiff was countersigned by the agents of the defendant, and bore no evidence of any agency or authority resting in Trimble & Co. It is difficult to conceive that the plaintiffs could have accepted it relying upon any agency or authority; or, that they did not rely wholly upon Trimble & Co. as their agents. And if they were negligent, or unfaithful in the performance of duty, it is to them the plaintiffs must look for redress of whatever loss or injury they may have sustained. The misdescription of the location of the storehouse, was either the act or fault of the plaintiffs, or of their agents; whether the one or the other, it can not avoid the warranty in the application.

The delivery of the policy to Trimble & Co. for delivery to the plaintiffs, on the payment of the premium, did not change their character and relation as agents of the plaintiffs. Thereby they were merely enabled to consummate their agency, and until its consummation the agency continued. Necessarily, thereby they became the agents of the defendant, limited in authority to the delivery of the policy and receiving payment of the premium. The payment to them of the premium, was the equivalent of a payment to the defendant, rendering the policy a binding contract, even though they had not paid the premium to the defendant.—*Arthurhold v. Susquehanna M. F. Ins. Co.*, 159 Penn. St. 1; s. c. 39 Am. St. 659. This subsequent and limited agency, incidental to and

springing from the relation Trimble & Co. bore to the plaintiffs, there is no reason for regarding as changing the character of that relation, in which they were dealt with by the defendant.

There was not only an absence of evidence of an agency for the defendant, of any kind or character, by Trimble & Co., when the application for insurance was prepared; but, as we have said, such agency was negatived, and affirmatively it appears that they were the agents of the plaintiffs. There was of consequence no error in the exclusion of the evidence, which could only be admissible when connected with legal evidence having a tendency to show the existence of the agency. "Whether there is any evidence or not is a question for the judge; whether it is sufficient evidence is a question for the jury.—1 Greenl. Ev., § 49. While it is the duty of the court to submit all competent evidence to the consideration and determination of the jury; it is equally a duty, when assuming the truth of all legal evidence adduced by the one party or the other, if it does not tend to support the issue he is bound to maintain, not to burden the jury with its consideration, protracting trials and needlessly consuming public time.

Let the judgment be affirmed.