# Triple Link Mutual Indemnity Ass'n v. Williams.

*Action on Policy of Insurance.*

1. *Action on life policy; sufficient to aver that the money claimed is due.*—If suit is brought on a policy of life insurance and a count in the complaint avers that the money claimed is due, it is not open to objection by demurrer for its failure to aver that satisfactory proofs of the death of the insured were made before bringing suit; if proofs of death had not been seasonably furnished before suit it was matter for plea in abatement; and if the evidence is free from conflict that such proofs were furnished, the overruling of the demurrer, had it been erroneous, did not injure the defendant.

2. *What is defensive matter in a suit on policy of life insurance.* In a suit on a policy of life insurance it is not necessary in a count or a complaint which sets out the policy, to aver that the defendant had money in its mortuary fund sufficient to pay the loss, or to set out therein other representations, agreements and warranties referred to in the policy, and to aver that the representations were true and the agreements and warranties had been kept and complied with, all these were matters of defence; as was also the insured's failure, if he did fail, to pay assessments and mortuary calls.

3. *Knowledge of insurance company's agent; when it prevents forfeiture of policy.*—An applicant to a life insurance company for a policy of insurance has the right to rely on the superior knowledge of the agent who takes the application, as to the terms in which the occupation of the applicant should be stated therein; and hence, where in answer to a question of the agent, the applicant states his occupation to be "foreman" and the agent writes "foreman of railroad yard," when in fact the occupation is foreman of a switching crew in a railroad yard, and the agent has full and accurate knowledge of the

[Triple Link Mutual Indemnity Ass'n v. Williams.]

character and danger of the occupation, and the applicant is aware of this knowledge of the agent, and is without fault in respect of the statement, he may assume that the agent wrote down what was proper to be stated as descriptive of his occupation; and under such circumstances the knowledge of the agent is the knowledge of the company.

4. *When a condition in a policy of insurance is waived.*—Where the circumstances attending an application for a policy of life insurance are such that the insurance company is charged with the knowledge of its agent, who takes the application, respecting the occupation of the applicant, and it issues a policy on the application taken and forwarded to it by the agent, it is held to issue the policy on the knowledge imputed to it from the knowledge of the agent, rather than on the terms of the application itself; and it cannot after the death of the insured—he having continued to his death in the same occupation—set up, in answer to a suit on the policy, that recovery should not be had because the insured was engaged in a hazardous employment which he failed to disclose in his application; the condition contained in the policy that he should not so engage was waived by the company when it issued the policy.

5. *When knowledge of agent does not prevent forfeiture.*—But if an applicant for a policy of insurance in terms falsely represents to the agent of the company taking the application that he is engaged in an employment less hazardous than the one written in the application, recovery cannot be had on the policy, although the agent knew or had been informed by the applicant that he was engaged in a more hazardous employment—the agent in such case being held to be in collusion with the applicant, or as being in some way induced by the applicant to get the false statement before the company.

6. *Delivery to postoffice is delivery to the person addressed.*—A policy of insurance is delivered to the insured when it is put in the mail duly directed to the insured and stamped.

7. *Agent of insurance company may take less than the usual fee.* Where there is a clause in a policy of insurance that it shall not take effect until the first assessment and admission fee are paid, and it is delivered to the insured during his life and continuance in good health, and it appears that he had paid an amount which the agent told him was the first assessment and the admission fee and took the agent's receipt therefor, it is not material that the regular fee was a greater sum and that the applicant knew it—the agent, representing and standing in place of the company, had the right to bind it by accepting less than the initial fee.

8. *Mailing policy a good delivery, though misdirected.*—If a policy is mailed to the insured addressed to the place which the company believes to be the residence of the insured it is a good delivery athough misdirected.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This was a suit by Mary L. A. Williams against the Triple Link Mutual Indemnity Association on a policy of insurance issued against the life of Chas. G. Williams, the husband of plaintiff.    The facts averred in the pleadings and which there was evidence tending to support were that, the deceased was the foreman of a switch engine crew in the yard of a railroad company.    In the application for the policy it was stated that the applicant was "foreman of R. R. yards."    The plaintiff in reply to the plea of mis-statement of occupation averred that the applicant told the agent of the company that he was "foreman" and that the agent wrote the words contained in the application; that the agent well knew the employment in which he was engaged, both because he had told the agent all about it, and because the agent had been with him and had seen him employed in switching, and had ridden on the engine with him.    There was conflict in this evidence.    Charges 5 and 17 were to the effect that if when Williams was asked his occupation answered "Foreman" and the agent said "Foreman of what?" and he replied "Foreman of railroad yards," and McCluskey, the agent, wrote down the answer and then handed the application to Williams and asked him if it was correct and he said it was and thereupon signed the same; and if Williams was foreman of a switching crew and such occupation was more hazardous than foreman of railroad yards, then if the jury believed these facts from the evidence they will find for the defendant.

There was verdict and judgment for the plaintiff.

LANE & WHITE and L. Y. LIPSCOMB, for appellant.—The policy set out shows that the defendant company had ninety days in which to pay it after proof of death; the complaint fails to aver that the ninety days had elapsed and demurrer to it should have been sustained.—4 Ency.

[Triple Link Mutual Indemnity Ass'n v. Williams.]

Pl. & Prac., p. 627, *Flouss v. Eureka Co.,* 80 Ala. 30; *Griel v. Solomon,* 82 Ala. 85. And so of other failures in the complaint to set out that there was a mortuary fund and other representations. (2). The court over-ruled the defendant's demurrer to plaintiff's first repli-cation to the 5th plea. This was error. The plea set out that the insured made a false answer as to his em-ployment. Replication that the agent of the defendant wrote down "Foreman of R. R. yard" in the application when the answer of the insured was simply "Foreman." The insured was not without fault.—*Pelican Ins. Co. v. Smith,* 91 Ala. 431. (3). The fourth replication to the seventh plea does not aver that Bessemer, to which the policy was addressed, was the postoffice of the insured.—*McCormick v. Joseph,* 77 Ala. 236; *Hatchett v. Molton,* 76 Ala. 410; *Buffington v. Curtis,* 15 Mass., 527; 2 Green-leaf. Ev., Sec. 297. (4). The policy was not to take effect till the first premium was paid and the agent could not dispense with this condition. The assured knowing he had not paid the premium.—1 May on Ins., Sec. 56; Bacon Benefit Society, Vol. 2, Sec. 353; 1 Wood on Fire Ins., p. 72; *Rodgers v. Charter Oak Ins. Co.,* 41 Conn., 97.

B. C. JONES and JAS. E. WEBB, *contra.*—The policy was delivered to Williams when mailed to him.—May on Ins., Vol. 1, Sec. 46; Bacon on Benefit Soc. & Life Ins., Sec. 272; *Northampton Ins. Co. v. Tuttle,* 40 N. J. Law, 103; *Treavor v. Wood,* 93 Am. Dec., 511; *Hartford Ins. Co. v. King,* 106 Ala. 519. (2). When policy uncondi-tionally delivered previous negotiations are merged and of no effect.—Bacon on Benefit Soc., Sec. 276; *Grace v. Ins. Co.,* 109 U. S., 276; *Hodge v. Ins. Co.,* 33 Hun., 583; *Eq. Ins. Co. v. McRea,* 8 Lea, 541; *Little v. Ins. Co.,* 38 Ohio State, 110; *Sheldon v. Ins. Co.,* 25 Conn., 207. (3). Where an application is written out by the agent a mistake made by him cannot be taken advantage of by the insurance company.—9 Am. St. Rep., 216; *Williams v. New Orleans Ins. Co.,* 84 Ala. 106; *Alabama Gold Life Ins. Co. v. Garner,* 77 Ala. 210; 22 S. W. Rep., 87; *North Am. Ins. Co. v. Throop,* 7 Am. Rep., 638; *Brown v. Ins. Co.,* 45 Mo. 221; 88 Ala. 606; 80 Ala. 571; 86 Ala. 551; 84 Ala. 106. (4). To render a policy void

*ab initio* for breach of warranty as to statements made in the application the contract must show on its face that it was the intention of the parties to provide therein for such forfeiture.—Bliss on Life Ins., Sec. 446; *Steim v. Home Ins. Co.*, 97 Am. Dec., 291; 58 Fed. Rep., 951; 66 N. W. Rep. 159; 110 Penn. St. Rep., 84. (5). The clause in the policy that Williams would not engage in specially hazardous occupations was of no effect because he did not change his occupation from the one he was engaged in when insured with the full knowledge of the agent.—*Brown v. Ins. Co.*, 45 Mo., 221; 4 Am. Rpt., S. P., 483; 30 Mich. Rep., 46; 94 Mich Rpts., 389.

McCLELLAN, C. J.—The second count avers that the money claimed is *due.* It is not open to the objection taken by the demurrer for its failure to aver in terms that satisfactory proofs of the death of the insured were made ninety days before the bringing of the suit. If proofs of death had not been furnished seasonably before suit, it was matter for plea in abatement. And moreover, the evidence is free from conflict that such proofs were furnished ninety days before the action was begun, and had the ruling been erroneous it did not injure the appellant.

It was not necessary for the second count of the complaint, which set out the policy, to aver that the defendant had money in its mortuary fund sufficient to pay the loss, nor to set out the representations, agreements and warranties referred to in the policy and aver that the representations were true and that the agreements and warranties had been kept and complied with. All these were matters of defense, as was also the insured's failure, if he did fail, to pay assessments and mortuary calls.—11 Ency. Pl. & Pr., 415.

One of the defenses mainly relied on is that the insured made a false representation or warranty in his application for insurance as to his occupation. It is averred in the pleas that the insured, Williams, warranted that the statements made in his application were true and that they were offered to the defendant as a consideration for the policy sued on, that the application was signed by Williams, and that therein, in answer to a

question as to what was his occupation, he stated that he was "foreman of R. R. yard," that said answer was untrue, that Williams was not foreman of a railroad yard, but was in fact foreman of a switching crew in a railroad yard. It is also averred—and there is conflicting evidence on the point—that there is in railroad service organization a position known as foreman of railroad yard, and that it is less hazardous than that of foreman of a switching crew in a railroad yard. To these pleas the plaintiff replied as follows: That J. A. McCluskey, who was the agent of the defendant to solicit persons to apply for insurance in the defendant company, applied to Williams to take out insurance in said company for $1,000, and called upon him to make answer to several questions in a printed application there produced by said McCluskey; and amongst others was the question as to what was the occupation of the said Williams, "that the said McCluskey filled out at the time in his own hand-writing the answers before the said Williams signed said application, that the said McCluskey for answer to the said question as to what was Williams' occupation wrote, 'Foreman of R. R. yard,' when in fact the said Williams said to McCluskey as his answer to the question in regard to his occupation ;that he was 'foreman;' that shortly prior to the writing of said application, when engaged in soliciting said William to take out said insurance, either on that day or the day before, said Williams had told McCluskey that he was foreman of the switch crew in the railroad yard, and that McCluskey had in fact been with said Williams while he had been in the discharge of his duties as such foreman of the switch crew but a short time before the writing out of said application and well knew when the application was made that the said Williams was engaged in the employment of said railroad company as foreman of said switching crew." The sufficiency of this replication was challenged by demurrer on the ground that it did not negative fault on the part of Williams in signing and delivering the application containing the erroneous statement, written therein by McCluskey, that he was "foreman of R. R. yard," one of the assignments of demurrer being this: "Because said replication does not

aver that the said Williams did not know that his answer to said question as to what was his occupation was written down 'foreman of R. R. yard' when he signed said application." The objection misconceives the replication and the principles of law underlying it. The theory of the replication is not that the agent without Williams' knowledge wrote down a mis-statement in the application and sent it to the company, but is that the agent, McCluskey, and through him the company knew the truth as to Williams' occupation and in the absence of fraud or fault on Williams' part are to be held to have contracted with reference to that knowledge and not with reference to a statement made by the agent in the application inconsistent with that knowledge, and that Williams was not at fault in respect of the statement, but that his answer was a truthful one, and, in view of McCluskey's previous knowledge of his occupation, was sufficiently full and accurate—such a one as any ordinary man would have made under the circumstances; and that, being aware that the agent had full knowledge of his occupation, Williams had a right to assume not only that he would write down the fact correctly, but also that when the agent wrote down "foreman of R. R. yard" that was such a statement of his occupation as was proper to be made in the application, and was true and correct. It is therefore immaterial whether Williams knew his occupation had been so stated in the application when he signed it. The agent knew all the facts as to his occupation. He is presumed to know better than Williams how the facts should be stated in the application. Williams had a right to rely upon his making a correct statement of them, and the statement that he was foreman of R. R. yard, having been written down Williams had a right to rely upon it that that for the purposes of the business in hand was the correct and truthful statement. Of course there might be such glaring repugnance between the fact and the statement in a given case that the applicant's failure to correct the statement would be evidence of fraud on his part; but this is not such case. Here Williams was a foreman in a railroad yard. He was, it is true, not foreman of the yard, but he was foreman of an engine and switching

crew working in the yard, and the evidence is free from conflict to show that there was no other sort of foreman in that yard, and it tends to show that there was no other sort of foreman in any railroad yard. The fact that he allowed to pass unchallenged the statement of the agent that he was foreman of R. R. yard with full knowledge of it does not tend to show fault or fraud on his part. To the extent there might be difference and discrepancy between the fact and the statement he had a right to rely upon the better knowledge of the agent as to what statement for the purposes of this occasion correctly set forth his occupation. Upon the ground therefore that the company knew what Williams' occupation was and that he was not at fault in respect of the statement made in the application for that he was justified in assuming its correctness, his knowledge that the statement was embraced in the application he signed, is immaterial and the demurrer to the replication was well overruled.—*Alabama Gold Life Ins. Co. v. Garner*, 77 Ala. 210; *Sellers v. Commercial Fire Ins Co.*, 105 Ala. 282; *Creed et al. v. Sun Fire Office*, 101 Ala. 522; *Williamson v. New Orleans Ins. Asso'n*, 84 Ala. 106.

But the knowledge or notice of the company itself on the facts set up in the replication was constructive merely; it did not have actual knowledge that Williams was the foreman of a switching crew, but the agent's knowledge on this subject is imputed to it. Now, if the facts were not as laid in the replication, but were different therefrom in respect of the answer made by Williams to the question, in that, as there is a tendency of the evidence to show, Williams in terms falsely represented to McCluskey that he was foreman of a railroad yard, and there was such a position and it was less hazardous than that of switch foreman, in our opinion, plaintiff should not be allowed to recover, although McCluskey knew or had been informed that Williams was foreman of a switching crew. In the case just put the application containing the false statement furnished all the actual information the company itself had as to Williams' occupation, and by it the insurer was misled to issue the policy. McCluskey in forwarding it was either acting in collusion with Williams to defraud the company—and

10

all authorities concur that that is ground for avoiding the policy—or, at the very least he was induced in some way by Williams to get that false statement before the company—either for that the fact of its being made caused him to doubt his knowledge or the correctness of his previous information on the subject, or otherwise— and in any event it would not have come to the company, they would not have acted upon it, they would not have been misled by it had Williams not made the false statement. On these tendencies of the evidence, therefore, Williams was clearly at fault in making the statement that he was foreman of a railroad yard; and sound principle as well as the best considered adjudications constrain us to hold that, if these be the facts, the mis-statement avoids the policy notwithstanding the agent knew the falsity of the answer when he wrote it down and sent the application to the company. This is the vitiating fault on the part of the applicant which is referred to in our own cases cited above and which is so declared by the weight of authority in other jurisdictions.—1 May on Insurance, § 133 B.

If the facts were as they were alleged in the replication—if Williams was not at fault in representing his occupation to the agent—if the agent knew his occupation, and hence the company—the issuance of the certificate to him was a waiver of the stipulation against his engaging in a hazardous occupation. On the case supposed he was insured by the company while engaged to its knowledge in the only hazardous occupation in which he was engaged at all, and he was insured with respect to that occupation. He never changed his pursuits, but continued in them to the instant of his death. The defense that he violated the agreement not to engage in a hazardous occupation is therefore merely cumulative upon the defense that he misrepresented his occupation. If the latter fails the former must fail also; and if the latter is made good, the former recovery is defeated without the aid of the latter.

Another defense much insisted upon is that the policy or certificate of insurance was never delivered to the insured, and hence that the contract sued on was not entered into by the defendant. There is a plea of *non est*

*factum* setting up this defense, and issue was taken upon it. The evidence received on this issue was free from conflict to the effect that the policy was written out at the home office of the company in Chicago, Illinois, signed by its president and secretary and mailed, duly stamped, on December 23, 1896, addressed to C. V. Williams, the person applying for the insurance, at Bessemer, Alabama, the place of his residence. Williams came to his death the following day, December 24, 1896. There can, of course, be no sort of doubt that on this state of case the mailing of the policy at Chicago was then and there in legal contemplation and effect a delivery of it to Williams on that day, December 23, 1896.— 1 May on Ins., §§ 46-49; 1 Bacon, Benefit Societies, §§ 272-3; *Hartford Fire Ins. Co. v. King,* 106 Ala. 519.

In this connection there was a special plea intended to set up that it was agreed by the terms of the application, that the contract of insurance "should not take effect until the first assessment and admission fee was paid and said certificate of membership [the policy] delivered to said Charles V. Williams 'during his life and continuance in good health,' and defendant avers that said first assessment and admission fee was not paid, and said policy was not delivered to said Charles V. Williams 'during his life and continuance in good health.'" The plaintiff replied to this plea that the certificate was signed by the officers of the company whose names appear on the copy thereof set out in the complaint, on the 23rd day of December, 1896, and that about two p. m. on that day "the said policy so signed, with the seal of the company attached thereto, was placed in an envelope addressed to said Charles V. Williams at Bessemer, Alabama, and deposited at about two p. m. on said day in the postoffice at Chicago, Illinois; and that at that time the said Charles V. Williams was in life and in good health, and did not die until the 24th day of December, 1896; and the plaintiff further avers that on, to-wit, the 18th day of November, 1896, J. A. McCluskey, who was the agent of defendant for soliciting insurance, and who applied to the said Williams to take out a certificate of membership in the defendant company, at the time of doing so informed the said Williams that the sum of two

dollars and forty-six cents was the amount of the first assessment and admission fee, which by the rules and regulations of the defendant was required to be paid by him on his certificate of membership in the Triple Link Mutual Indemnity Association for insurance limited to one thousand dollars; and that then and there the said Williams paid to the said McCluskey as such agent the said sum of two dollars and forty-six cents as such first assessment and admission fee, and the said McCluskey gave him a receipt therefor; and that the said McCluskey did not advise or inform said Williams then or at any other time that any other or greater sum than $2.46 was the first assessment and admission fee which was necessary to be paid in order to secure said insurance, nor did he demand of said Williams any other or different or greater sum than $2.46 for that purpose." The policy recites that Williams resided at that time at Bessemer, Alabama, and the policy was set out in the complaint. It was not necessary for this replication to reiterate his residence at that place, even conceding that there need have been any averment on that subject, which is by no mans clear, since it may well be that the mailing of the policy to the place where the officers of the company *supposed* him to reside, as is evidenced by the recital, would as effectually evidence their intention to deliver it, though they may be mistaken in point of fact, as mailing it to his true address.

Nor is it a good objection to the replication that it fails to aver that the officers of the company put the policy in the mails at Chicago. The averment is that the policy was properly signed and sealed by the company, and about a stated hour was placed in the post-office at Chicago. The necessary implication is that it was mailed by the company. It would be an unreasonable and absurd constrution of the averment to hold it to mean that this was done by a stranger without the assent of the defendant, and courts do not adopt absurd constructions even against a pleader.

The defendant rejoined to this replication "that at the time assured paid the $2.46 set out in said replication, the said assured knew that the first assessment and admission fee was a sum greater than the amount paid by

him, namely $2.46." Read strictly, this is an averment that the greater sum was $.46. But aside from that, the rejoinder was bad. McCluskey representing and standing in the place of the company had a right to bind it by accepting less than the initial fee, and if he did so and the policy was issued, it is of no consequence that Williams knew that the regular and customary fee charged by the company was more than the company charged him.

The court in its general charge instructed the jury as follows: "It is for you to say, gentlemen of the jury, what answer was given to the agent. If you should say, from the evidence in this case, at the time when the application for the policy was made by Williams, the assured, that he, through inadvertence, or through intention, or for any other reason misled or imposed upon the company in the matter of his statement of his occupation, then he would not be entitled to recover. But if he made a statement of what his business was, although he did not go into detail of what it was, and the agent of the insurance company knew what his business was from any dealings or transactions with him while he was seeking to effect the policy of insurance between them, then that knowledge would be the knowledge of the company, and the company would be misled, not by any act of the assured, but by the act of the agent if there was an answer to a question that was not true, and such mistake could not opperate to the injury of the applicant, and the insurance company would be bound just as if the applicant has stated the facts truthfully." The defendant excepted to the last sentence in the foregoing instruction On the principles we have above declared the exception is well taken. Where the insurance company is misled by a false warranty of the applicant as to his occupation the knowledge of the agent of its falsity does not, as we have seen, emasculate the warranty of its vitiating quality. Whatever his knowledge it is to be presumed the agent would not have sent the false statement to his principal but for its having been made by the applicant: indeed, the greater and more accurate the agent's knowledge, the more certain it is that a statement contrary to the truth is due to the fault of the

applicant. The court erred in the part of the charge under consideration, and the ruling is not aided by other parts of the general charge.

Upon the same considerations charges 5 and 17 refused to the defendant are only faulty, if at all so, in assuming that there was such a position in railroad service as foreman of a railroad yard. The remaining portions of the court's general charge and its other rulings upon charges requested by plaintiff and given, and requested by defendant and refused are in consonance with the views we have expressed in the course of this opinion.

We shall not discuss the rulings of the trial court on the admissibility of testimony. They have been examined and considered and found to be free from error prejudicial to appellant.

Reversed and remanded.